(No. 2151—

MARSHALL MANHART, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1935.*

VICTOR C. MILLER AND WM. T. HOLLENBECK, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Prior to and on the 13th day of May, A. D. 1931, claimant was employed by the respondent in the Department of Public Works and Buildings, Division of Highways, and was engaged in mowing weeds along the right-of-way of S. B. I. Route No. 1 just north of Walnut Prairie in Clark County.

On the last mentioned date, while claimant was driving a team of mules and operating a mower for the purpose of mowing weeds on the shoulder of the highway, said mower was struck by a truck owned by one Harold Adams, and driven by his agent, which approached from the rear. The force of the collision demolished the mower, killed one of the mules and injured the other. Claimant was thrown onto the pavement between the mules, and the mowing machine passed over him, whereby he sustained injuries to his right ankle and leg, his knee, in the pelvic region and other parts of his body —for which injuries he seeks to recover compensation herein.

It appears from the evidence that said Harold Adams owns no real estate and very little, if any, personal property over his exemptions, and for that reason a judgment against him, if such judgment could be obtained, would avail nothing. Notwithstanding that fact, he bought a new mower for claimant, also another mule, and repaired the harness—borrowing the money for that purpose, which money had not been entirely repaid at the time Adams testified herein. Claimant therefore makes no claim against the State for the damage done to his personal property.

This court has held in numerous cases that in the maintenance of its hard-surfaced roads, the State is engaged in an extra-hazardous business or enterprise within the meaning of Section 3 of the Workmen's Compensation Act. There is no question but what the claimant's injuries arose out of and in the course of his employment and he is therefore entitled to compensation under the terms and provisions of the Workmen's Compensation Act. The respondent paid medical, hospital and other bills in the aggregate amount of $888.10, and

also paid compensation for about eleven months, the exact amount being uncertain, claimant contending that the amount paid was \$518.40, and respondent contending that the amount paid was \$536.40. Claimant's earnings at the time of the accident were \$21.60 per week, and he contends that his earning capacity has been reduced fifty to seventy-five per cent as the result of the injuries sustained by him, and that he is entitled to additional compensation for temporary total disability for six weeks at \$10.50 per week, and that in addition thereto, he is entitled to compensation for permanent partial disability for 416 weeks at the rate of \$8.10 per week.

It appears from the evidence that although claimant was discharged from the hospital about July 12 or 15, 1931, he continued under the doctor's care for about eleven months after the accident, and that he received compensation for about eleven months at \$10.80 per week. Dr. Junkin discharged him on April 19, 1932, and apparently claimant has received compensation for the entire period of temporary total disability.

Section 8d of the Workmen's Compensation Act provides as follows:

"If, after the injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in the cases covered by the specific schedule set forth in paragraph (e) of this section, receive compensation, subject to the limitations as to time and maximum amounts fixed in paragraphs (b) and (h) of this section, equal to fifty percentum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."

The evidence of Dr. Charles O. Highsmith, a physician who treated claimant at the time of the injury and who was called by him as a witness, is to the effect that there is no permanent injury except to the right ankle and leg and there is no substantial evidence to the contrary. Claimant therefore is not entitled to compensation for any permanent partial disability under Section 8d, but is entitled to compensation for the specific loss sustained by him under Section 8e15. The evidence is not entirely satisfactory, but indicates that the claimant has sustained a loss of fifty per cent of the use of his right leg.

Under the provisions of Section 8e15, claimant is entitled to 95 weeks compensation at $10.80 per week for the loss of 50 per cent of the use of his right leg, to-wit, the sum of $1,026.00, which amount under the terms and provisions of the Workmen's Compensation Act is payable in weekly installments of $10.80 commencing at the time the period of temporary total incapacity ceased, but which amount under the terms of said Act is all now due.

Award is therefore entered in favor of the claimant for the sum of One Thousand Twenty-six Dollars ($1,026.00).